# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### Western Division

| | |
|---|---|
| In Re: ) | |
| ) | |
| NEWCARE HEALTH CORPORATION, ) | CHAPTER 7 |
| et al., ) | CASE NUMBER: 99-44161-HJB, et al. |
| ) | Jointly Administered |
| Debtors. ) | |
| _____) | |
| ) | |
| GARY M. WEINER, Chapter 7 Trustee ) | |
| for the estate of NEWCARE HEALTH ) | |
| CORPORATION, et al., ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | ADVERSARY PROCEEDING |
| ) | NO: 01-4188-HJB |
| CHRISTOPHER F. BROGDON, et al. ) | |
| Defendants ) | |
| _____) | |

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Pursuant to Federal Bankruptcy Rule 7037, incorporating Federal Rule of Civil Procedure 37, Defendants James J. Andrews, Christopher F. Brogdon, Connie B. Brogdon, Tygh Brogdon, Brentwood Health Care, LLC, Chamber Health Care Society, Inc., Chamber Pasco, LLC, Fitzgerald Health Care, Inc., Gordon Jensen Health Care Association, Inc., Kingsport Senior Housing, LLC, Robert G. Lancaster, Estate of Edward E. Lane, Harlan Mathews, National Assistance Bureau, Inc., Philip M. Rees, Retirement Group, LLC, Rockdale Retirement, Inc., James H. Sanregret, Sea Breeze Health Care Center, Inc., Senior Care, Inc., Southeastern Cottages, Inc., Darrell C. Tucker, Wellington Healthcare Management, LLC and Winter Haven Homes, Inc. (collectively, the "Defendants") hereby move to compel the production of responsive documents from Plaintiff Gary M. Weiner, Chapter 7 Trustee (the "Trustee") of the

Bankruptcy Estates of NewCare Health Corporation, et al. (the "Debtors' Estates"), on the ground that the Trustee has not complied with Federal Rule of Civil Procedure 34, as it is incorporated by Federal Bankruptcy Rule 7034, in that he is producing for inspection and copying over 658 boxes of documents stored at a warehouse in Chicopee, Massachusetts, many of which documents probably are not responsive, without identifying which of such documents are responsive to the Defendants' specific document requests.

## FACTUAL BACKGROUND

1.      On or about June 22, 1999, NewCare Health Corporation ("NewCare Corp.") and the other related debtor-entities filed Chapter 11 Bankruptcy in the District of Massachusetts – Western Division.

2.      On or about March 18, 2002, the bankruptcy case was converted from a Chapter 11 bankruptcy to one under Chapter 7 of the U.S. Bankruptcy Code.  On or about March 19, 2002, Gary M. Weiner was appointed the interim Chapter 7 Trustee.  Mr. Weiner was appointed permanent Trustee in May 2002.

3.      On or about June 21, 2001, the Plaintiff's predecessor, William A. Brandt, Jr., Examiner (the "Examiner") on behalf of the Debtors' estates commenced this Adversary Proceeding against various individual and corporate defendants.

4.      The 45 page Complaint makes sweeping, often vague, accusations against the Defendants, alleging, inter alia, self dealing, fraudulent transfers, breaches of fiduciary duties, and the wrongful transfer of millions of dollars from the Debtors.  (Complaint ¶ 2.) The broad scope of the allegations have created extensive discovery demands for the Defendants.

5.      On or about July 18, 2003, the Defendants served the Trustee with the Defendants' First Request for Production of Documents (the "Request for Production"), along

with the First Set of Interrogatories propounded by each of the Defendants. On or about

September 28, 2003, the Defendants received the Trustee's Response to Defendants' First

Request for Production of Documents (the "Response") in which the Trustee agreed to produce

documents responsive to the Request for Production. The Response stated that the Trustee "will

produce all responsive documents in his possession, custody, or control."[1]  Further, the Response

stated in pertinent part as follows:

> In particular, the Trustee will make documents available for
> inspection or copying as they have been maintained and are
> currently maintained by the Trustee. The Trustee will not
> segregate or identify documents for production by request number.
> To assist defendants in their review of potentially responsive
> documents, the Trustee has previously provided defendants with an
> index, in electronic and paper format, of those documents in his
> possession, custody or control.

6.     In early October 2003, Defendants' counsel inspected approximately 78 boxes of

documents stored at the offices of the Trustee's counsel, Cooke, Clancy & Gruenthal, LLP, in

Boston, Massachusetts. Trustee's counsel has represented that her office culled these 78 boxes

from the original universe of boxes of documents at the storage facility in Chicopee, consisting

of 736 boxes of documents. An inspection of the documents at Cooke, Clancy required three

individual attorneys reviewing the documents for almost three full days.

7.     Also in early October 2003, the Trustee informed the Defendants that there were

an additional 658 boxes of documents (now estimated by the Defendants to be 1.6 million pages)

that would be made available for inspection and copying at the Bay State Records Center in

Chicopee, Massachusetts. On October 7, 2003, at the Trustee's deposition, the Defendants

objected to the manner in which the documents were being made available, without any effort to

designate, sort, or separate responsive documents from non-responsive documents according to

---

[1] Some responses stated that the Trustee "will produce responsive documents, if any . . . ."

the Defendants' Requests. Trustee's counsel Paula Bagger replied, by letter dated October 9, 2003, that the Trustee need only produce the "documents as he maintains them in the ordinary course of business." (Emphasis added.) Further, the Trustee's counsel provided what she characterized as an index to the boxes of documents, crossing off the boxes Trustee's counsel believes contain "irrelevant" documents. The "index" contains a list of document categories purportedly contained in numbered boxes, but does not contain an index of specific documents in the boxes. The Trustee's counsel described her methodology as follows:

> I have only attempted to distinguish between entire boxes of documents. If a box is crossed off, it means that I believe that the entire box contains irrelevant documents. If a box is not crossed off, it means that I think one or more documents in the box may be relevant.

A true and accurate copy of the October 9, 2003 letter is attached hereto as Exhibit A.

8. Subsequently, Defendants' counsel along with Defendant Philip Rees traveled to Chicopee, Massachusetts to begin inspection of the 658 boxes of documents stored there. The inspection was almost delayed because, as Trustee's counsel informed the Defendants, warehouse employees were in the process of relabeling certain boxes of documents at the storage facility. Apparently, some boxes became damaged or worn along the way, necessitating a transfer of documents to newer boxes.[2] The Defendants were unable to inspect all the boxes they had requested to see that day (approximately 50 boxes) because some were still being relabeled by warehouse employees. After inspecting approximately 40 boxes of documents, the Defendants noted that the documents generally did not appear to be kept as they were kept in the

---

[2] The damage occurred either in transport from NewCare's offices in Atlanta, Georgia to Lenox Health Care, Inc. and Thomas Clarke, its President, in Pittsfield, Massachusetts in 1999, or upon or after transfer to the Examiner's possession, custody or control, or in transit from Pittsfield to the Examiner's or later to the Trustee's leased storage facility in Chicopee, Massachusetts in 2001.

usual course of business at NewCare Health Corporation ("NewCare") at its offices in Atlanta, Georgia prior to the bankruptcy.[3]

9.    The Defendants once again raised their objections to the document production with the Trustee by letter dated October 31, 2003. In the letter, Defendants' counsel objected to the Trustee's manner of production in that the Trustee had not reviewed all his documents and had not culled out those documents not responsive to the Request for Production. Defendants' counsel further pointed out the Trustee's "obligation to produce responsive documents for inspection in such a manner that will not render the process an excessively burdensome and costly expedition to the Defendants." A copy of the October 31, 2003 letter is attached hereto as Exhibit B.

10.    The Defendants never received a written response to their October 31, 2003 letter. On December 1, 2003, Defendants' counsel did discuss with Trustee's counsel by telephone the Trustee's obligations concerning the manner in which the documents would be made available to the Defendants. The Trustee's counsel reiterated the Trustee's position that he had fully complied with his discovery obligations under the Federal Rules of Civil Procedure.

11.    In addition to the foregoing discovery, the Defendants have also noticed the depositions of ten (10) different individuals having discoverable information. The Defendants have taken the depositions of seven (7) of those individuals, even though the Trustee has not produced responsive documents in compliance with his obligations under Fed. R. Civ. P. 34. The Defendants have produced documents in stages of production as they have been discovered

---

[3] For example, Defendant Philip Rees, former general counsel for NewCare Health Corporation, reviewed the documents in Box 278 and noted that the box contained legal files he had maintained while at NewCare but that the files, as they appeared in Box 278, had not been kept in the usual course of business as he had kept them. The legal files had been mixed in with other files, the legal files had been taken out of alphabetical order and one particular folder contained mostly documents that did not even relate to the title on the folder.

by the Defendants. In contrast, the Trustee has conducted almost no discovery other than submitting Requests for Production of Documents and Interrogatories to the Defendants in July 2003, to which the Defendants have provided answers and responses. Until this week, the Trustee did not notice any depositions, knowing that the deadline for taking depositions would expire on December 11, 2003. Last week, the parties in a compromise filed a joint motion to extend the discovery period by 30 days to and including January 9, 2004, pending a decision by this Court on the parties' various discovery motions, including the instant motion.

12.    The Defendants now seek to compel the production of documents in accordance with the Trustee's obligations under the Federal Bankruptcy Rules and Federal Rules of Civil Procedure.

## LAW AND ARGUMENT

**A.    Even if the Documents Produced by the Trustee are as They are Kept in the Usual Course of Business of NewCare, the Trustee Has Not Fulfilled his Obligations Under Rule 34 by Producing the Documents En Masse Without Eliminating All Non-Responsive Documents**

Rule 7034 of the Bankruptcy Rules, incorporating Rule 34 of the Federal Rules of Civil Procedure (hereinafter "Rule 34"), permits parties to submit requests for documents and tangible things "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. Rules 34 and 26 (b). Rule 34 outlines the procedure for production of documents, providing, in pertinent part:

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

The foregoing provision was added in 1980 as an Amendment to Rule 34. Prior to the Amendment, Rule 34 contained no explicit guidance as to the manner in which documents were

to be produced. In this instance, producing documents in the manner the Trustee suggests is in violation of his obligations pursuant to Rule 34, as amended. See <u>supra</u>.

The general purpose of the Amendment was to ensure that documents in a case are produced in a manner that facilitates the just, speedy, and efficient resolution of disputes. <u>See Board of Educ. of Evanston Township v. Admiral Heating</u>, 104 F.R.D. 23, 36 (N.D. Ill. 1984). Rule 34 was amended specifically to prevent discovery abuses such as the deliberate mixing of critical documents with others, in hope of obscuring significance. Fed. R. Civ. P. 34 Advisory Committee Notes, 1980 Amendment. Caselaw applying Rule 34 before the 1980 Amendment was, at times, consistent with this purpose. <u>E.g.</u>, <u>Kozlowski v. Sears, Roebuck & Co.</u>, 73 F.R.D. 73, 76 (D. Mass. 1976). In <u>Kozlowski</u>, a personal injury product liability case, the plaintiff requested production of all complaints and communications concerning injuries caused by pajamas allegedly manufactured by Sears, Roebuck & Co. ("Sears"). <u>Kozlowski</u>, 73 F.R.D. at 76. Sears refused to produce such documents, arguing there was no practical way to retrieve the documents because Sears had a longstanding practice of indexing claims alphabetically by name of claimant rather than by product type. <u>Id.</u> at 75. The court held that a party may not excuse compliance with Rule 34 by "utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition." <u>Id.</u> at 76. Moreover, Sears' offer to permit plaintiff's counsel to "hunt" through the documents himself was unavailing, since such an offer was nothing more than a "'gigantic do it yourself' kit." <u>Id.</u> at 77 (quoting <u>Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.</u>, 64 F.R.D. 459, 462 (S.D.N.Y. 1974)).

The Trustee attempts to place the burden on the Defendants to hunt for the responsive documents themselves in the Trustee's massive collection. It is the duty of the producing party to cull responsive documents. See Fed. R. Civ. P. 34; Board of Educ. of Evanston Township, 104 F.R.D. at 36. The court in Board of Educ. of Evanston Township compelled the producing party to segregate the responsive documents according to the terms of the request for production of documents. Id. at 36. The producing party had argued, as the Trustee does here, that it needed only to produce what appeared to be massive amounts of files as they were kept in the usual course of business. Id. The court rejected this argument because "the burden to a stranger of rummaging through what may be massive job files to find the 'smoking gun'" justified placing the burden of segregating the documents on the producing party. Id. at 36 n.20; see also Stiller v. Arnold, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (holding that a production of 7000 documents in no apparent order did not comply with Rule 34).

Similarly, several commentators have agreed that discovery obligations require more than just producing documents as they are kept in the ordinary course of business when the manner in which the documents are kept requires review of voluminous amounts of unresponsive documents. 7 James Wm. Moore et al., Moore's Federal Practice § 34.14[3] (3d ed. 2003) (the producing party should be permitted to choose the method of production "except when some special factor justifies allowing the requesting party to select the method, such as when the method chosen places an unreasonable burden on the party seeking production"); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2213 (2d ed. 2003) ("the producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with items actually sought under Rule 34"); Sherman & Kinnard, Federal Court Discovery in the 80's –

Making the Rules Work, 95 F.R.D. 245, 257-58 (1982) ("If the filing system is not adequate for finding the relevant documents without undue delay and expense, then the discovered party should not be allowed to produce the documents as kept unless it provides additional resources to aid the discovering party.").

Accordingly, in this instance, producing the documents for inspection in the manner the Trustee has suggested does not fulfill the Trustee's Rule 34 discovery obligations, and in fact shifts the Trustee's obligations to the Defendants which Rule 34 does not permit. Board of Educ. of Evanston Township, 104 F.R.D. at 36; Kozlowski, 73 F.R.D. at 77. Pursuant to the Trustee's current production methodology, as stated in his counsel's letter dated October 9, 2003, "if a box is not crossed off, it means that [the Trustee] think[s] one or more documents in the box may be relevant."[4] As such, the Trustee forces the Defendants to inspect possibly several hundred boxes of documents with the possibility of discovering only a single responsive document in each box. (Even if the possibility were a few or a dozen documents in a box, the analysis is the same.)

The Trustee's practice is directly contrary to the intent and purpose of Rule 34 which is designed to prevent the mixing of documents so as to obscure the responsive significance. The result is no different when the documents are not shuffled or mixed but are simply produced en masse without first being reviewed by the producing party to cull out the non-responsive

---

[4] Trustee's counsel crossed off approximately 300 boxes from the index. It appears, however, that Trustee's counsel crossed off the boxes based solely on the index of categories rather than knowing whether responsive documents are actually in those particular boxes. The problem with this approach is highlighted by one example gleaned during the review by Defendants' counsel of a limited number of boxes at Chicopee in October 2003. The Trustee's index states that Box 1958, which Trustee's counsel did not cross off, contains a category of documents titled "Renaissance Fee Application." When Defendants' counsel reviewed Box 1958, they found it contained documents regarding the fee application for Renaissance Cosmetics, Inc., as well as documents concerning Ogden Corp. To the best of Defendants' knowledge, neither Renaissance Cosmetics, Inc. nor Ogden Corp. are related in any way to the Debtors or the Defendants. Furthermore, the index did not even mention Ogden Corp. Simply put, the Trustee's index is inaccurate and incomplete. Without reviewing the documents contained in a box, one cannot even know that the documents in the boxes match the category descriptions in the Trustee's index. Thus, Trustee's counsel's "crossing off" boxes is meaningless and of no help to the Defendants in connection with the Trustee's production of responsive documents.

documents before the requesting party begins its inspection of the documents. When one considers just one box of documents fitting the Trustee's standard of one or more relevant documents contained therein and applies it to 658 boxes, such discovery abuse is dramatically compounded. In just one box, the Defendants would have to search thousands of pages to find the one, two, or three documents that may be responsive to the Defendants' itemized Rule 34 Requests. Having to do this exercise with 658 boxes certainly seals the point – it is an absolutely unfair and unreasonable shifting of the burden to the Defendants in this proceeding. The Trustee's attempt to shift its discovery burden to the Defendants on such a massive scale should not be countenanced by the Court.

Furthermore, in a case such as this in which the allegations in the Complaint are so vague, fair and compliant document production has added importance. Early in the proceeding, the Defendants sought to have the Trustee clarify and amend his complaint by filing a Motion For More Definite Statement because of the broad, sweeping and yet often ambiguous allegations in the Complaint. The Motion was heard by U.S. Bankruptcy Judge Henry Boroff, who denied it, but Defendant Philip Rees reasonably recalls that the Court indicated in substance during the hearing that a more definite statement was unnecessary because the allegations in the Complaint would be deciphered and illuminated during the discovery process. The Trustee's failure to produce documents responsive to Defendants' Rule 34 Requests in a manner required by the Rule is contrary to the Court's stated expectations and does nothing to clarify the Trustee's allegations in the Complaint.

Any argument by the Trustee that suggests that he does not have the same discovery obligations as any other party in litigation would be without merit. There is no legal authority supporting the notion that the Trustee is exempt from Rule 34 discovery obligations because of

24983.0/00803538.DOC

10

his status as a bankruptcy trustee. Nor is there any authority for the proposition that a Trustee should be treated any differently than a plaintiff in non-bankruptcy civil litigation with respect to discovery issues. Furthermore, the Trustee should not be forgiven from the requirements that Rule 34 imposes upon producing parties merely because some Defendants may have some familiarity with the Debtors' documents. While it is not disputed that some Defendants, as former officers or directors of the Debtors, may have had more familiarity with particular individual documents, the Defendants are not familiar with the Trustee's entire collection of documents or the manner in which the Trustee keeps the documents. Moreover, the Defendants can not discern the location of particular documents (i.e., in which box and where therein) from the cursory and inadequate index provided by the Trustee. The Trustee's index merely provides categories of documents (including a category entitled "Misc. loose papers") and does not index particular documents. Simply put, the Trustee does not have a privilege to shift its discovery obligations as a producing party to the Defendants as a perk of his position.

Consequently, given the express purpose of the 1980 Amendment to Rule 34 and the Courts' application of Rule 34, before and later, so as to encourage the efficient resolution of litigation, the Trustee in this adversary proceeding must produce and identify by item of Request the documents responsive to the Defendants' Requests for Production, rather than merely direct defendants to a vast aggregation of boxes of assorted documents and force the defendants to fend for themselves in the hope of uncovering some responsive documents relevant to the Trustee's claims or their defenses. Specifically, given the estimated million and one half or more pages of documents at the Chicopee facility, the Trustee must, at a minimum, provide a detailed index of documents that designates the boxes containing responsive documents and identifies the responsive documents within each such designated box by Bates Stamp number or by some other

means reasonably enabling the defendants access to the documents that are responsive to their specific requests.

**B.    The Documents Are Not Organized as They Were Kept in the Usual Course of Business; Therefore, the Documents Produced Must be Designated According to the Defendants' Specific Requests**

Alternatively, the Trustee may not produce the documents in the "go fish" manner that he desires because the documents are not organized as they were kept in the usual course of business. Based on the Defendants' initial inspection of the documents in Chicopee, it is obvious that the documents have not been filed and maintained as they were kept in the usual course of business of NewCare.[5] This reorganization possibly was caused by warehouse employees who transferred documents to newer boxes and relabeled the boxes in Chicopee or perhaps during the initial boxing of the documents in Atlanta or then again while maintained and used in Pittsfield. Trustee's counsel has stated that the original file boxes became damaged or worn at some point between transport from Atlanta, Georgia to the Baystate Records Center in Chicopee, Massachusetts. Warehouse employees apparently refiled the documents in new boxes, but in doing so failed to relabel the boxes accordingly. There is no indication or evidence that warehouse employees, who are completely unfamiliar with the documents, their importance, or how they were organized, would be able to meticulously relabel each box as they were originally kept.

Consequently, the Trustee's methodology of production violates Rule 34 because the documents are not organized as they were kept in the usual course of business by NewCare. As a result, the Trustee can comply with Rule 34 only if he produces documents responsive to each request in the Request for Production and identifies which such documents are responsive to

---

[5] See footnote 3 supra.

each specifically numbered request in the Request for Production. This the Trustee has cavalierly failed to do.

## CONCLUSION

Even if the documents are produced as kept in the usual course of NewCare's business, the Trustee has failed to comply with his discovery obligations by producing mountains of documents not responsive to the Request for Production and by failing to specifically identify the responsive documents and the items of request they relate to, thereby placing an undue burden on the Defendants prohibited by Rule 34. Moreover, the documents are not currently organized as they were kept in the usual course of the business of NewCare; therefore, the Trustee must produce only the documents responsive to each request in the Defendants' Request for Production and must specifically match the document to each such request.

WHEREFORE, the Defendants respectfully request allowance of this Motion to Compel.

Respectfully submitted,

CHRISTOPHER BROGDON, et. al.,
By their attorneys,

Dennis J. Kelly, Esq. (BBO #266840)
Paul R. Mastrocola, Esq. (BBO #630664)
Victoria L. Schmidt, Esq. (BBO #650000)
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617)345-3000

## Local Rule 7.1(A)(2) Certification

I, Dennis Kelly, hereby certify that, on December 1, 2003, I had a telephone conversation with plaintiff's attorney, Paula M. Bagger, in a good faith effort to resolve the issue.

Dated: December 15, 2003

Dennis J. Kelly

## CERTIFICATE OF SERVICE

I, Victoria L. Schmidt, Esq., attorney for the Defendants, do hereby certify that I have this 15th day of December, 2003, served a copy of the foregoing Motion, via facsimile or first class mail, postage prepaid, upon all counsel of record.

Victoria L. Schmidt

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### Western Division

JAN 26 '04 PM 4:19 USB

|  |  |  |
|---|---|---|
| In re NEWCARE HEALTH CORPORATION, et al., | ) | Chapter 7 |
|  | ) | Case No. 99-44161 |
|  | ) | Jointly Administered |
|  |  |  |
| GARY M. WEINER, Chapter 7 Trustee of | ) |  |
| NewCare Health Corporation, et al., | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) | Adversary Proceeding No. |
|  | ) | 01-4188 |
| CHRISTOPHER F. BROGDON, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPPOSITION TO DEFENDANTS' MOTION
## TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff Gary M. Weiner, Chapter 7 Trustee for the bankruptcy estates of NewCare Health

Corporation, et al. (the "Trustee"), opposes *Defendants' Motion to Compel Production of Documents.*

This Court should deny the *Motion to Compel* because the Trustee has complied with his obligation under

Fed.R.Bankr.P. 34 to produce responsive documents "as they are kept in the usual course of business."

Indeed, defendants' motion is mislabeled as a motion to *compel* production of documents in light of the

fact that the Trustee has made available *all* non-privileged documents in his possession, custody, or control.

The Trustee has, as described below, exerted significant efforts to make documents available to defendants.

What the Trustee will not do, however, is the work that the Rules impose upon defendants to build their

own case.

In addition to inviting defendants to view and tag for copying any documents stored in the Bay State Records Center in Chicopee, Massachusetts, The Trustee has also:

  ○  provided a detailed index of NewCare documents stored in Chicopee, Springfield, and Boston;

  ○  identified, photocopied and sent to defendants approximately 12,000 pages of additional responsive documents, most of which relate to the IBM computer system containing NewCare's financial records, which is in the Trustee's possession;

  ○  made available for review and photocopying[1] approximately 78 boxes of documents that are now at Cooke, Clancy's Boston office, having been removed from the Chicopee warehouse following the Trustee's own review of documents in the Chicopee warehouse;

  ○  produced photocopies of the documents received in response to the six third-party document subpoenas he has served in this matter; and

  ○  made available to defendants documents it has received under the cooperation clause in its settlement agreements with the settling defendants in this matter.

(*See* Affidavit of Paula M. Bagger ("Bagger Aff."), ¶ 6.)

  The Trustee has thus more than fulfilled his document production obligations. The rules do not impose upon the Trustee the obligation of reviewing all of the documents in the Chicopee warehouse to identify, by request number, which of the 173 document requests served by defendants each of document might be responsive to. The rules require the Trustee to produce the documents as they were maintained by NewCare itself, and he has done so. Asking the Trustee to do more makes no sense in this case where, in addition to the other considerations alluded to above, it is the defendants who are familiar with the documents in question and the filing scheme formerly in use at NewCare.

---

[1]  Defendants have in fact already reviewed these documents and tagged them for photocopying.

## BACKGROUND

NewCare entered into a management contract with Lenox Healthcare, Inc. ("Lenox") in June 1999, pursuant to which Lenox undertook the management of all of NewCare's facilities. Clarke Deposition at 64-65 (Bagger Aff. Ex. B). Because Lenox had undertaken the management of NewCare, NewCare's documents were boxed up and sent to Massachusetts. Henderson Dep. at 162-75 (Bagger Aff. Ex. A). After Lenox ceased managing NewCare's facilities, the documents were removed to a large warehouse, owned by the *Berkshire Eagle*, in Lenox, Massachusetts. There they were accessed by counsel for William Brandt, Chapter 11 Examiner, as necessary, and later by Cooke, Clancy & Gruenthal, LLP ("Cooke Clancy"), special counsel to the Examiner in this adversary proceeding.

When Cooke, Clancy first saw the NewCare documents in May 2001, shortly after its appointment, there were hundreds of shipping boxes of documents, as well as filing cabinets (with documents inside), and office furniture in a large warehouse in Lenox, Massachusetts. Armed with an approximately 100-page document index (initially created by NewCare, then augmented by Lenox during the period it managed NewCare), and later completed and revised by Cooke Clancy), Bagger Aff. ¶ 2, Cooke, Clancy was able to locate the basic documents of the case (corporate minute book, annual reports, management contracts) as well as other documents easily. The only real difficulty was physically locating particular numbered boxes in the massive Lenox warehouse – a problem that no longer exists now that the Trustee has moved the boxes to a professional storage facility, Bay State Records Center. After several days of document review by counsel and several paralegals, boxes that appeared potentially relevant were removed to Cooke, Clancy's Boston office. Bagger Aff. ¶ 3.

3

In the spring of 2002, the case converted to a Chapter 7 liquidation and Gary M. Weiner was appointed Chapter 7 Trustee. One of Mr. Weiner's first actions was to remove the boxes of NewCare documents from the warehouse in Lenox and place them at a professional storage facility, Bay State Records Center, in Chicopee, Massachusetts. In August 2002, the boxes were transferred to Chicopee. Bagger Aff. ¶ 4.

In order to avoid incurring unnecessary expenses related to reviewing and removing boxes later, Cooke, Clancy reviewed all of the boxes before they were checked into the storage facility. On two days in August, 2002, two lawyers, one paralegal, and one summer clerk from Cooke, Clancy reviewed all of the boxes, which were temporarily placed in a warehouse room at Bay State Records Center in Chicopee. On one of those two days, they were assisted by Mr. Weiner and a paralegal and summer clerk from Mr. Weiner's firm. Together, the Trustee and his counsel conducted a brief review of each box, indexed those boxes that were not on the original index created for Lenox Healthcare, and corrected the existing index where erroneous. With Mr. Weiner's permission, approximately fifty additional boxes of documents were removed to Cooke, Clancy's offices in Boston., and Mr. Weiner removed a smaller number of boxes to his offices in Springfield. These removals were duly noted on the master document index first created for Lenox Healthcare and amended and edited by Cooke, Clancy. *Id.*

At this time, Bay State Records Center informed the Trustee that it would be necessary to rebox the documents, *not* because the boxes were damaged[2] but rather because the records storage facility requires the use of boxes of a uniform size. The boxes in which the documents had been shipped from

---

[2]     It is puzzling that defendants tell the Court that the documents were reboxed because of damage. Special Counsel explained to defendants' counsel that the documents were being reboxed because of the physical limitations of the storage space in Chicopee and for no other reason.

4

Atlanta were too large to fit on the shelves at Bay State Records. The documents that had been shipped from Atlanta in commercial moving boxes were placed into new, "bankers' boxes" by Bay State Records but were otherwise maintained in the same order in which they had been boxed and shipped from Atlanta and retained their original file folders, labels, and other means of organization. The documents remain in the same order and filed in the same manner as when they were shipped by NewCare to Lenox.

Defendants have suggested that the fact that there are now more boxes in Chicopee than left Atlanta is somehow an indication that the order and filing scheme of the documents has been changed. This is not the case; rather, because the "bankers' boxes" are smaller than commercial moving boxes, the contents of one box often hd to be placed into two boxes. Bagger Aff. ¶ 5.

Bay State Records Center maintained a spreadsheet for its own use so that documents identified by the numbers appearing on the master document index (created for Lenox and revised by Cooke, Clancy) could be located in their new boxes at the storage facility. Initially, Bay State failed to include a number of the boxes on its tracking spreadsheet, but it has agreed to remedy this administrative glitch. *Id.*

The Trustee made his initial disclosures in this case in September 2002. As part of those initial disclosures, the Trustee appended the then-current version of the master document index.[3] No objection to this response was raised by any defendant. The remaining defendants did not serve any document requests until August 2003, when they served 173 requests for production of documents on the Trustee. Bagger Aff. ¶ 6.

---

[3]     The Trustee gave defendants a revised document index when they commenced reviewing boxes of documents in Boston and Chicopee. The Trustee has not appended this index to its opposition because it is 129 pages long. The Trustee will have copies of the document index available at oral argument of this motion.

On October 8, 2003, one defendant (Mr. Rees) and one of defendants' counsel reviewed approximately forty boxes of documents at the offices of Bay State Records in Chicopee. They identified six boxes containing documents they wished copied. Because they never gave copying instructions for these boxes of documents, the Trustee has moved them to Boston as well, for the greater convenience of counsel. Bagger Aff ¶ 8.

Between October 20 and December 2, 2003, the remaining 23 defendants in this case collectively produced 3138 pages of documents to the Trustee, or an average of 136 pages per defendant. Only on December 2, 2003, did the Trustee learn that defendants considered this rather modest document production complete. Also on December 2, 2003, the Trustee learned that defendants had changed their position on the close of discovery, refusing to assent to a further extension of discovery unless the Trustee made other, unrelated concessions. Accordingly, the Trustee immediately noticed the ten depositions to which he is entitled as a matter of right. Those depositions are going forward on mutually convenient dates. Bagger Aff ¶ 9.

## ARGUMENT

I. **THE TRUSTEE HAS MORE THAN SATISFIED HIS PRODUCTION OBLIGATIONS BY PRODUCING NEWCARE'S DOCUMENTS AS THEY WERE KEPT IN THE USUAL COURSE OF BUSINESS AND PROVIDING DEFENDANTS WITH A DETAILED INDEX OF THOSE DOCUMENTS.**

Rule 34(b) of the Federal Rules of Bankruptcy Procedure explicitly provides that a party producing documents has the option of producing them "as they are kept in the usual course of business." This is exactly what the Trustee has done. The Trustee has made available *all* of the documents of NewCare. These documents have been boxed and stored by a professional storage company in their original folders,

redwells, and binders, retaining their original labels, order, and organization, as the documents were maintained by NewCare while it was in business. The Trustee has satisfied his obligation to produce NewCare documents as kept in the usual course of business. In addition, the Trustee has provided defendants with a document index, which was started by NewCare itself, added to by Lenox when it was managing NewCare, and then completed and revised by Cooke, Clancy when this adversary proceeding commenced.

The only basis for challenging a party's right to produce documents as kept in the usual course of business is when the documents are "so disorganized that it is unreasonable for the [party to whom the documents have been produced] to make [its] own review." *See In re G-I Holdings Inc.*, 2003 WL 22300502 at * 12-13 (D.N.J. July 17, 2003); *Renda Marine, Inc. v. The United States*, 2003 WL 22427413 at *7-8 (Ct. of Fed. Cl. Aug. 29, 2003). The purpose of his exception is to prevent a party from employing a system that purposefully impedes the identification of important documents. *See Renda Marine*, 2003 WL 22427413 at *7. That is not the case here. There is no allegation that NewCare's system of maintaining records during the course of business was designed to hamper discovery – since the defendants include former officers of NewCare who were themselves responsible for the maintenance of corporate records, it is not surprising that they did not level this allegation. Nor is there any allegation that the Trustee has rearranged the documents, or created a system of storing the documents to impede discovery. To the contrary, the documents are retained in the same order and system created by the former NewCare management. Indeed, the Trustee has even arranged for the general review and indexing of the contents of the stored boxes of documents (at substantial expense), and provided this index to the

defendants. Under these circumstances, it is reasonable to require the defendants to review the documents in their current state.

Nonetheless, the defendants argue that because the Trustee is storing the NewCare document in boxes provided by the storage company, that the documents are no longer organized as kept in the usual course of business. This argument is nonsensical. The Trustee has produced the documents as organized, filed, and labeled by NewCare management. The NewCare documents came to the Trustee in ordinary, haphazardly labeled moving boxes used by NewCare management to move its records from Georgia to Massachusetts in July 1999, with the closing of NewCare's Atlanta headquarters – there is nothing special or sacred about the original moving boxes. It is the order, labeling, and filing system that determines the organization of documents, and the Trustee has been careful to maintain this organization. The fact that the documents have been moved to new, uniform boxes, in the same files, order and labeling they were in as kept by NewCare, satisfies the requirement that the documents be produced as kept in the usual course of business, particularly when produced with a comprehensive index as the Trustee has done. *See In re Hunter Outdoor Products, Inc. v. Parlow*, 21 B.R. 188 (Bankr.D.Mass. 1982) (Court rejected motion to compel defendant Bank to produce documents labeled to correspond to document requests, where defendant had produced documents in unmarked boxes, otherwise organized as maintained in the usual course of business).

The defendants also argue that the production of the entirety of NewCare's documents is unfair because the records are so voluminous, thereby constituting "an absolutely unfair and unreasonable shifting of the burden to the Defendants in this proceeding." This argument, however, has been rejected by the courts. In *Renda Marine*, for example, the defendant complained about plaintiff's production of documents

as kept in the ordinary course of business, and argued that "the large volume of produced documents (more than 38,000 pages of records by plaintiff's own estimate) is burdensome," asking that the court order the plaintiff to designate produced documents to correspond to the categories of defendant's document requests. 2993 WL 22427413 at *8. The United States Court of Federal Claims rejected this argument, reasoning that without an allegation that the plaintiff's filing system was "so disorganized" that the defendant was unable to meaningfully review the documents, the defendant's objection to the production "on the volume alone" was insufficient to preclude the plaintiff from producing documents as kept in the usual course of business. *Id.* The same reasoning applies here. Between the fact that the NewCare documents remain as organized by NewCare management, and that the Trustee has provided an index of the contents of the boxes of document, the defendants can conduct a meaningful review of the documents.

**II.    THE DEFENDANTS ARE BETTER SITUATED THAN THE TRUSTEE TO IDENTIFY DOCUMENTS CRITICAL TO THEIR CASE BECAUSE THEY ARE FAMILIAR WITH THEIR OWN FORMER DOCUMENTS AND FILES AND THE TRUSTEE IS NOT.**

In any event, there is an oddity here that distinguishes this case from the usual situation where a motion to compel is filed – namely that the movants, former officers of NewCare, such as Christopher Brogdon and Robert Lancaster, are in a better position than the Trustee to find and identify the documents critical to their case, since they were the management of NewCare when these documents were generated and filed. This is not the usual situation where the defendant is a corporation with an elaborate system for filing and organizing documents and a phalanx of clerks to find and retrieve documents. Instead, the Trustee inherited a warehouse of documents organized and labeled by the former management of NewCare, including the defendants, without a substantive knowledge of the contents of the NewCare

9

records. Any knowledge of the contents of NewCare's records was gleaned during the indexing of the NewCare documents, and the Trustee has already shared this information with the defendants. Further, to the extent that the Trustee has identified any boxes that contain documents relevant to his case, he has segregated these boxes and provided defendants with access to these boxes of "important" documents. The Trustee has also agreed to provide the defendants with copies of any further documents that he retrieves from storage. Under these circumstances, the Trustee has provided (or will provide) the defendant with as much information about the NewCare documents that he (or his counsel) possesses. He can do no more.

Moreover, the defendants' document requests are so broad as to preclude any meaningful culling of non-responsive documents by the Trustee. In July 2003, the defendants served 173 separate document requests, including requests for "All documents concerning the claims in this action against" each of the defendants. As this Court in *In re Hunter Outdoor Products, Inc. v. Parlow* held, particularly where the movant has served broad document requests that require the producing party to produce documents that might "show or tend to show" certain things, the producing party may produce documents as kept in the usual course of business, and the court will not require the producing party to "make" the case for the movant. 21 B.R. 188, 191-92 (Bankr. D. Mass. 1982). In this case, the Trustee has produced all of the documents that he will rely upon to make his case, but he cannot be required to review all of the NewCare documents to identify and gather all of the documents that makes the defendants' case for them. *Id.* Accordingly, the Court should deny the defendants' motion to compel.

## CONCLUSION

For the reasons discussed above, the Trustee requests that the Court deny the *Motion to Compel.*

Respectfully submitted,

GARY M. WEINER, Chapter 7 Trustee of the Bankruptcy
Estates of NewCare Health Corporation, et al.

Marjorie Sommer Cooke (BBO No. 097800)
Paula M. Bagger (BBO No. 547703)
Edward S. Cheng (BBO No.634063)
COOKE, CLANCY & GRUENTHAL, LLP
150 Federal Street
Boston, MA 02110
(617) 428-6800

Dated: December 23, 2003

## CERTIFICATE OF SERVICE

I, Paula M. Bagger, hereby certify that I have this 23rd day of December, 2003 served a true copy of the foregoing pleading upon counsel for all defendants, and upon the United States Trustee, by first-class mail, postage prepaid.

Paula M. Bagger

F:\NewCare\PLEADING\Opp to Defendants' mot to compel.wpd

11

# UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS
## Proceeding Memorandum/Order of Court

**In Re:** Weiner v. Brogdon et al                    **Case Number:** 01-04188                    **Ch:**

**MOVANT/APPLICANT/PARTIES:**
#311 Motion of Defendants to Compel production of documents by Plaintiff
Dennis J. Kelly, Esq.
Paula M. Bagger, Esq.

**OUTCOME:**
_____Granted_____Denied_____Approved_____ Sustained
_____Denied_____Denied without prejudice_____Withdrawn in open court_____Overruled
_____OSC enforced/released
_____Continued to:_____For :_____
_____Formal order/stipulation to be submitted by:_____Date due:_____
_____Findings and conclusions dictated at close of hearing incorporated by reference
_____Taken under advise ment: Brief(s) due_____From_____
                                 Response(s) due_____From_____
_____Fees allowed in the amount of: $_____Expenses of: $_____
_____No appearance/response by:_____
__✔__DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:


DENIED.


IT IS SO NOTED:                              IT IS SO ORDERED:

_____             _____  Dated: 01/16/2004
Courtroom Deputy                            Henry J. Boroff, U.S. Bankruptcy Judge